UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANNA L. MIRANDA, on behalf
of herself and all others
similarly situated,

       Plaintiff,

vs.

CACH LLC, *et al.*,

       Defendants.

**INDEX:  15-CV-627 (LEK) (DJS)**

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER
SUPPORT OF HER MOTION TO AMEND THE COMPLAINT**

June 13, 2016

Daniel A. Schlanger, Esq.
Kakalec & Schlanger, LLP
85 Broad Street, 18th Floor
New York, New York 10004
T.  212-2500-6114, ext. 101
F.  646-612-7996
dschlanger@kakalec-schlanger.com

Anthony J. Pietrafesa, Esq.
721 University Building
120 East Washington Street
Syracuse NY 13202
T. 518.218.0851
F. 518.514.1241
ajp@ajp1law.com

*ATTORNEYS FOR PLAINTIFF*

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT .................................................................................... 1

II. FACTUAL BACKGROUND ........................................................................................ 1

   A. The Amended Complaint's Well-Pleaded Allegations ....................................... 1

III. ARGUMENT ................................................................................................................ 3

   A. Legal Standard ................................................................................................... 4

   B. The Amended Complaint States Claims Against The Individual Defendants ............. 4

   C. Personal Jurisdiction Is Properly Asserted Over Defendants Lowery And Larkins .. 9

IV. CONCLUSION ........................................................................................................... 10

By leave of Court, Plaintiff Anna L. Miranda, by and through counsel, respectfully submits this Reply in response to the opposition briefs filed by Defendants CACH, LLC ("CACH") and Daniels Norelli Scully & Cecere, P.C. ("DNSC").  Dkt. Nos. 47-48, 50.

## I. PRELIMINARY STATEMENT

CACH's opposition seeks to prevent Plaintiff from adding P. Scott Lowery ("Lowery") and Paul A. Larkins ("Larkins") as Defendants.  DNSC's opposition likewise seeks to prevent Plaintiff from adding James Scully as a Defendant.[1]  Defendants' oppositions and accompanying affidavits are most notable for what they do not contend.  They do not dispute either that (i) the conduct at issue violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, or that (ii) the violative conduct occurred in this district.  *See* AC ¶ 8.  Nor do they dispute that each Individual Defendant is a debt collector (*id.* ¶¶ 29, 36, 52) who managed and/or supervised the persons or entities that caused the violation.  *Id.* ¶¶ 25, 28, 51.  Conceding these core allegations, Defendants instead engage in distraction, proffering irrelevant factual affidavits while ignoring relevant legal authorities.  For the reasons discussed below, Plaintiff's motion should be granted because the Proposed Amended Complaint (Dkt. No. 39-2, the "Amended Complaint" or "AC") states plausible claims against each Individual Defendant.

## II. FACTUAL BACKGROUND

### A. The Amended Complaint's Well-Pleaded Allegations

The Amended Complaint alleges – and Defendants do not in their briefs or affidavits dispute – that Defendants have violated the FDCPA and N.Y. G.B.L. § 349 by issuing thousands of summonses in state court collection actions brought in this District containing materially false representations.  The summonses, filed by DNSC on behalf of CACH (the nominal plaintiff in each state court collection action) misstate the legal rights of Ms. Miranda and the rest of the

---

[1] Mssrs. Lowery, Larkins and Scully are referred to herein, collectively, as the "Individual Defendants."

1

class by stating that they that they had significantly less time to answer the state court collection complaints that was the case. AC ¶¶ 68-70; 106-116.

As detailed in the Amended Complaint, while presenting themselves as a debt-collecting law firm, DNSC is in reality part of an integrated debt-collecting conglomerate including nominal state court plaintiff CACH and its parent company SquareTwo Financial Corporation ("SquareTwo"). *See* AC ¶¶ 10-54. Within this structure, DNSC acts as the New York "branch office" and "franchisee" of SquareTwo, which is itself a Delaware corporation headquartered in Colorado. *Id.* ¶¶ 41-48. SquareTwo, in turn, conducts debt collection activities through its alter ego[2] CACH . *E.g.*, *id.* ¶¶ 20-24. From behind this multi-layered network of entities, the Individual Defendants, all debt collectors themselves, manage, direct, and supervise a vast number of collection matters. AC ¶¶ 25-29, 51-52.

Far from conclusory, the Amended Complaint's allegations are supported by Defendants' own public statements. SquareTwo's annual Form 10-K, filed with the Securities and Exchange Commission in December 2015, states that SquareTwo and franchisees such as DNSC exist within a "Closed Loop Network" and that "all customer account information and collection activity is managed within . . . our proprietary integrated account management system, ***and in accordance with a standardized set of comprehensive policies and operations procedures, which we refer to as our 'Compliance Management System.'*** " SEC Filing, SquareTwo Financial Corporation, Annual Report (Form 10-K) (Apr. 26, 2015) (emphasis added).[3] Moreover, as detailed in the Amended Complaint, the complex relationship between these

---

[2] District courts around the country have addressed the relationship between CACH and SquareTwo. *E.g.*, *Martinez v. CACH, LLC*, 2011 U.S. Dist. LEXIS 68586, at *18 (S.D. Cal. June 27, 2011) ("Here, Plaintiff's allegations of an alter ego relationship between CACH and SquareTwo are sufficient to state a plausible claim."); *see also Morris v. CACH, LLC*, 2013 U.S. Dist. LEXIS 152362, at *1-2 (D. Nev. Oct. 22, 2013) ("Plaintiff has adequately alleged a principal/agent relationship to impute liability under the FDCPA to SquareTwo Financial.").
[3] *http://d1lge852tjjqow.cloudfront.net/CIK-0001505966/3aed6172-0c9d-456e-a695-ce0f51dfcfab.pdf?noexit=true*. DNSC and SquareTwo have previously boasted of their association in newspaper articles, which have reported that DNSC is "one of SquareTwo's oldest franchisees." Aldo Svaldi, "Denver debt-recovery firm flourishing," Denver Post Oct. 5, 2010, *http://www.denverpost.com/2010/10/05/denver-debt-recovery-firm-flourishing*.

2

entities – including SquareTwo, CACH, and DNSC – is designed specifically to evade FDCPA liability by asserting that all collection activity is undertaken by entities that purport to have little net worth, *see* 15 U.S.C. §1692k(a)(2)(B)(ii) (capping recovery for statutory damages in class actions at "the lesser of $500,000 or 1 per centum of the net worth of the debt collector"), while protecting the Individual Defendants, who are the statutory debt collectors responsible for managing and supervising collection activities. AC ¶¶ 33-34, 123-25.

The Amended Complaint likewise includes specific allegations concerning the roles of the Individual Defendants:

- o <u>Defendant Scully</u>.  The Amended Complaint alleges that Scully is the partner at DNSC that "*oversees collection practice*" and who "*has final, supervisory authority over all form documents*," including the Illegal Letter sent to Ms. Miranda.  AC ¶¶ 50-53 (emphasis added).  Scully's affidavit (Dkt. No. 48-1) does not deny these allegations, nor do the Oppositions deny the Scully is a debt collector within the meaning of the FDCPA.[4]

- o <u>Defendants Lowery and Larkins</u>.  The Amended Complaint alleges that Lowery and Larkins are "*managers*" who "*ha[ve] final, supervisory authority*" over CACH's and SquareTwo's debt collection practices.  AC ¶¶ 25, 28 (emphasis added).  Lowery simultaneously serves as the President and CEO of SquareTwo, which he controls both directly and indirectly through family trusts.  *Id.* ¶ 25-26.  Lowery and Larkins "regularly attempt to collect debts alleged to be due another", and are therefore debt collectors within the meaning of the FDCPA.  *Id.* ¶ 29.  Lowery's and Larkins' affidavits (Dkt. No. 47-1, 47-2) do not deny that they regularly attempts to collect debts owed to another, rendering them debt collectors within the meaning of the FDCPA, nor that they manage and have final supervisory authority of CACH's and SquareTwo's collection activities.[5]

### III.     ARGUMENT

As discussed below, the Amended Complaint contains well-pleaded allegations – notably uncontested in the Individual Defendants' sworn affidavits – that each of the Individual Defendants is a debt collector within the meaning of the FDCPA who supervised or managed the issuance of the false summonses at issue in this litigation.  As a result of these uncontested

---

[4] According to his biography on DNSC's website, Scully "has been in the debt collection business since 1986." http://www.dnctlaw.com/attorneys-staff

[5] Lowery's and Larkins' Opposition brief asserts, without citation, that Lowery and Larkins "are not debt collectors." (Dkt. No. 47 at 7.)  Yet in their own sworn affidavits, Lowery and Larkins do not deny the Amended Complaint's allegations that they regularly engage in the collection of debts owed to another, which is the FDCPA's definition of "debt collector," *see* 15 U.S.C. § 1692a(6).

3

allegations, and in light of prevailing authorities concerning vicarious liability for FDCPA violations, the Amended Complaint states a plausible claim against the Individual Defendants.

### A. Legal Standard

Leave to amend should be "freely" given "when justice so requires." Fed. R. Civ. P. 15(a). Leave may be denied if the proposed amended pleading would be futile because it fails to state a claim. *E.g.*, *Jeda Capital-56, LLC v. Lowe's Home Ctrs., Inc.*, 2013 U.S. Dist. LEXIS 141978, at *7-8 (N.D.N.Y. Sept. 30, 2013). When determining whether an amendment would be futile, courts must apply the Rule 12(b)(6) standard, accepting as true well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Lai v. Deloria Foods Inc.*, 2016 U.S. Dist. LEXIS 25160, at *12 (N.D.N.Y. Feb. 29, 2016). Matters outside the complaint are ordinarily not to be considered. *See Lawson v. Broome Cnty*, 2016 U.S. Dist. LEXIS 12513, at *14 (N.D.N.Y. Feb. 3, 2016).

### B. The Amended Complaint States Claims Against The Individual Defendants

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors," *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015), "and . . . ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged," *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir. 2008). "The FDCPA provides, *inter alia*, that a 'debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt.'" *Smith v. New Falls Corp.*, 2014 U.S. Dist. LEXIS 126621, at *4 (N.D.N.Y Sept. 10, 2014).

To be liable under the FDCPA, a defendant must be a "debt collector," which is defined by statute as, *inter alia*, "any person" who "regularly collects or attempts to collect . . . debts owed . . . or due another." 15 U.S.C. § 1692a(6). Because the FDCPA is "'remedial in nature . . . its terms must be construed in liberal fashion.'" *Hart v. FCI Lender Servs.*, 797 F.3d 219, 225

4

(2d Cir. 2015).  Finally, because the FDCPA "imposes strict liability, a consumer need not show intentional conduct by the debt collector". *Russell v. Equifax*, 74 F.3d 30, 33 (2d Cir. 1996).

While no Second Circuit case addresses vicarious liability under the FDCPA, a plethora of authorities hold "that principals or corporate parents may be held vicariously liable for their agents' or subsidiaries' actions that violated the FDCPA where the principals are themselves 'debt collectors.'"  *Polanco v. NCO Portfolio Mgmt*, 132 F. Supp. 3d 567, 584 (S.D.N.Y. 2015). As the Third Circuit has explained, vicarious liability is necessary because a debt collector subject to the FDCPA "bear[s] the burden of monitoring the activities of those it enlists to collect debts on its behalf."  *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000).

Leading authorities within this Circuit hold that "debt collectors . . . are vicariously liable for FDCPA violations committed by agents acting on their behalf, *whether or not they exercised direct control over them.*"  *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 156 (S.D.N.Y. 2015) (emphasis added) (collecting cases and examining legislative history of FDCPA).  Courts have noted the deep common law roots of this principle.  *See id.* at 157 ("[H]olding debt collectors vicariously liable for their agents' actions is consistent with traditional common law principles" which "ordinarily makes principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'") (internal brackets omitted); *accord Polanco*, 132 F. Supp. 3d at 586 ("[The] broad, pro-debtor objectives of the FDCPA . . . are served by . . . placing on a debt collector the burden of monitoring the activities of those it enlists to collect debts on its behalf") (internal quotation marks omitted).

In light of these authorities, the Amended Complaint plausibly states claims against each of the Individual Defendants.  The Amended Complaint alleges that each of the Individual Defendants regularly collects debts on behalf of another (AC ¶¶ 25-26, 29, 51-52), meaning that they are debt collectors for purposes of the FDCPA. 15 U.S.C. § 1692a(6).  The Amended

5

Complaint further alleges that each of the Individual Defendants managed and/or had final supervisory authority with respect to the violations in this case.  AC ¶¶ 25, 28, 51.  Each of the Individual Defendant debt collectors therefore must "bear the burden of monitoring" the activities of those whom they employ and supervise, *Polanco*, 132 F. Supp. 3d at 586, and accept responsibility when their agents violate the FDCPA.[6]  *See Gomez*, 129 F. Supp. 3d at 156.

      While certain courts within this Circuit have confined vicarious liability under the FDCPA to situations in which the principal exercises "control" over its agent, *e.g.*, *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011), the Amended Complaint states a claim pursuant to this standard as well.  That is because Defendants have admitted in SEC filings that they exercise extensive control over the debt collection activities of franchisees such as DNSC, and that such franchisees are part of a "Closed Loop Network" employing an "integrated account management system" and "a standardized set of comprehensive policies." AC ¶¶ 40-47.  The web of alter ego entities is, ultimately, managed and supervised by Defendants Lowery and Larkins.  *Id.* 25-26, 29.  And as to Scully, he is the partner who supervises debt collections at DNSC (*id.* ¶¶ 51-52).

      Rather than addressing these authorities[7] or the relevant factual allegations in the Amended Complaint, the Individual Defendants submit sworn affidavits proffering irrelevant factual assertions.[8]  As a preliminary matter, submission of evidence outside of the Amended

---

[6] Even assuming *arguendo* that DNSC was hired by Lowery and Larkins as local counsel (rather than as part of a "Closed Loop Network" operating within Lowery's and Larkins' entities strict parameters, as is alleged), Lowery and Larkins would still be liable for the violations committed by the DNSC attorneys.  *See, e.g.*, *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) ("[C]ases have specifically noted that vicarious liability may attach in the context of an attorney-client relationship where both the attorney and its client constitute 'debt collectors' under the FDCPA.").

[7] The one case cited in DNSC's brief for a proposition unrelated to the pleading standard, *Nichols v. Frederick J. Hanna & Associates, PC*, 760 F. Supp. 2d 275 (N.D.N.Y. 2011) (cited at Dkt. No. 48 at 3-4), is inapposite.  In *Nichols*, leave to amend was denied after Judge Hurd determined that the *contents* of the letter at issue did not violate the FDCPA.  *Nichols*, 760 F. Supp. 2d at 279-80.  Here, Defendants do not dispute the violation.

[8] By pointing to the Individual Defendants' flimsy factual affidavits, Plaintiff seeks only to underscore the plausibility of her proposed pleading.  Plaintiff does not consent to conversion of this motion to one for summary

6


Complaint is contrary to the Rule 12(b)(6) standard that Defendants concede applies on this motion.  *See* Dkt. No. 48 at 2-3.  In any event, the affidavits conspicuously fail to address (much less deny) the key factual allegations – chiefly that each of the Individual Defendants managed and/or has final supervisory authority over the debt collection practices at issue.

Instead, the Individual Defendants' affidavits engage in distraction.  For example, Scully's affidavit avers that "[t]he form City Court summons served upon Ms. Miranda was drafted prior to my admission to the New York State bar."  Dkt. No. 48, ¶ 4.  But the question is not when a document was drafted.  It is, instead, whether Scully's agent (here, his associate) employed the false representation in the document "in connection with the collection of a debt," *Corazzini v. Litton Loan Serv. LLP*, 2010 U.S. Dist. LEXIS 27398, at *9 (N.D.N.Y. Mar. 23, 2010) (Kahn, J.), which Scully concedes occurred in this case.[9]  Dkt. No. 48 at 5.

Scully next avers in his affidavit that he "did not personally review or sign the summons served upon Ms. Miranda."  Dkt. No. 48, ¶ 6.  But in light of the vicarious liability jurisprudence discussed above, which Scully does not address, Scully's personal review of the summons is not dispositive.  The relevant inquiry is whether Scully's associate was acting within the scope of her employment or whether Scully exercised control over his associate's work.  Scully does not, presumably because he cannot, deny either of these two critical facts.  Scully similarly avers that he "has not communicated in any fashion with Ms. Miranda" and that "all matters related to Ms. Miranda's account have been handled by Daniels Norelli staff."  Dkt. No. 48, ¶¶ 7-8.  Again,

---

judgment, as critical discovery necessary for Plaintiff to prove her claims has yet to be taken.  *See Snyder v. Fantasy Interactive, Inc.*, 2012 U.S. Dist. LEXIS 23087, at *4 (S.D.N.Y. Feb. 9, 2012).

[9] Scully's effort to hoist all responsibility for the violation onto his associate (Dkt. No. 48 at 5) is also contrary to N.Y. Bus. Corp. Law § 1505, which provides that "[e]ach shareholder, employee or agent of a professional service corporation . . . shall be personally and fully liable and accountable for any negligent or wrongful act   misconduct committed . . . by any person under his direct supervision and control while rendering professional services on behalf of such corporation."

7

these averments are calculated to dodge the relevant factual allegations concerning Scully's supervision and control over his associate's debt collection work.

Lowery's and Larkins' affidavits similarly avoid the relevant allegations in the Amended Complaint.  For example, their affidavits aver that they "do not communicate with consumers in New York or in any other State" (*e.g.*, Dkt. No. 47-1, ¶ 5), but they do not deny that they regularly attempt to collect debts owed to another (*see* AC ¶ 29), which is what renders them debt collectors for purposes of the FDCPA, *see* 15 U.S.C. § 1692a(6).  Similarly, while Lowery and Larkins aver that they "never contacted or attempted to contact the plaintiff in this case," they tellingly do *not* deny that they supervised and/or managed their agents who contacted Ms. Miranda (*see* AC ¶ 28) while under Lowery's and Larkins' control.

Finally, instead of addressing relevant factual allegations in the Amended Complaint, Lowery and Larkins attack a straw man, contending that the Amended Complaint "sue[s] the out[-]of[-]state officers of a large multinational corporation based only upon their title."[10]  Dkt. No. 47 at 6.  To the contrary, the Amended Complaint names Lowery and Larkins because they "oversee . . . and have final supervisory authority" over the debt collection practices at issue (AC ¶ 28), ***allegations that Lowery and Larkins do not dispute.***  That Lowery and Larkins also happen to be corporate officers is not relevant to the principal-agent analysis.  In any event, even if Lowery and Larkins did not manage and supervise the violations at issue, "[t]here is an open question whether, if an officer qualifies as a debt collector, that officer may be held personally liable based solely on the action of serving in his role as officer of the company."  *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 1000 (9th Cir. 2012).  The Court need not resolve this question,

---

[10] Lowery and Larkins cite *Rella v. North Atlantic Marine Ltd.*, 2004 U.S. Dist. LEXIS 11567 (S.D.N.Y. June 21, 2004), for the proposition that "corporate officers or directors . . . can't be held personally liable for breaches of contract or tortious acts committed by the corporations." Dkt. No. 47, at 7.  But *Rella* only addressed liability for common law conversion and breach of contract, *Rella*, 2004 U.S. Dist. LEXIS at 2, 29-30, and did not address vicarious liability under the FDCPA.  *Rella* is therefore inapposite.

8

however, as the Amended Complaint states claims based on general principles of vicarious liability, and Lowery and Larkins do not deny managing and supervising the violation at issue.

In short, the Individual Defendants' reliance on irrelevant factual assertions – improperly submitted at the pleading stage – and their concomitant failure to address the relevant allegations, all support the plausibility of Plaintiff's detailed allegations that the Individual Defendants supervised and managed agents within New York who filed the violative summonses, making them personally liable under the FDCPA.

### C. Personal Jurisdiction Is Properly Asserted Over Defendants Lowery And Larkins

Having plausibly pleaded that Lowery and Larkins supervised and managed an FDCPA violation within this district, and that the violation was committed by agents working for Lowery's and Larkins' benefit, it follows that the Court may properly exercise personal jurisdiction over both Lowery and Larkins. New York recognizes personal jurisdiction over an individual who conducts affairs here "through an agent."[11] N.Y. C.P.L.R. § 302(a)(1). "For purposes of personal jurisdiction, an agent is a person or entity that acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." *Nat'l Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 360 (S.D.N.Y. 2004) (internal citations omitted).

Here, the Amended Complaint alleges that Lowery and Larkins knowingly retained agents (*i.e.*, franchisees) within this state to collect debts. Further, Lowery and Larkins supervised and controlled the local agents within their "Closed Loop Network" and, *inter alia*, through a standardized "Compliance Management System" while maintaining final supervisory authority (AC ¶ 28.) The exercise of personal jurisdiction over Lowery and Larkins for the

---

[11] Personal jurisdiction in FDCPA cases is governed by New York law. *See Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168-69 (2d Cir. 2015) (citing authorities "noting that FDCPA plaintiffs should be able to file suit in their states of residence because otherwise, debt collectors could invoke the protection of distance and send violative letters with relative impunity.") (internal quotation marks and brackets omitted).

9

violative conduct of their agents – whom they knowingly retained in New York to collect debts on their behalves – is therefore proper.  *See generally* G*rove Press, Inc. v Angleton*, 649 F.2d 121, 649 F.2d 121, 122 (2d Cir. N.Y. 1981).

Lowery's and Larkins' personal jurisdiction argument relies primarily on *Gerstle v. National Credit Adjusters, LLC*, 76 F. Supp. 3d 503 (S.D.N.Y. 2015).  *Gerstle* criticized boilerplate allegations of management and control, whereas in the present case, Defendants, on their own initiative, have submitted factual affidavits, yet declined to deny their supervision and control over the violative conduct.   Moreover, the *Gerstle* court's suggestion of a "primary actor" prerequisite for personal jurisdiction traces back to a New York Court of Appeals case holding that a "[p]laintiff . . . need only convince the court that [the agent] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [out-of-state] defendants and that they exercised some control over" the company doing business in New York.  *Kreutter v. McFadden Oil Corp*, 71 N.Y.2d 460, 467 (N.Y. 1988).  *Kreutter* distinguished between a "primary actor in the transaction" and "some corporate employee in Texas who played no part in it."  *Id*. at 470.  In sum, this line of cases does not preclude the exercise of personal jurisdiction over principals properly found to be vicariously liable for their agents' wrongdoing in New York.

### IV.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Motion be granted.


*[signature blocks on next page]*

10

June 13, 2016
New York, New York

        Respectfully Submitted,

        */s/ Daniel A. Schlanger*

        Daniel A. Schlanger, Esq.
        Kakalec & Schlanger, LLP
        85 Broad Street, 18th Floor
        New York, New York 10004
        T.  212-2500-6114, ext. 101
        F.  646-612-7996
        dschlanger@kakalec-schlanger.com

        Anthony J. Pietrafesa, Esq.
        721 University Building
        120 East Washington Street
        Syracuse NY 13202
        T. 518.218.0851
        F. 518.514.1241
        ajp@ajp1law.com

        *Attorneys for Plaintiff and the Putative Class*