## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

Anna L. Miranda, *on behalf of herself and all others similarly situated,*

*Plaintiff,*

v.

CACH LLC; SquareTwo Financial Corporation; Daniels, Norelli, Scully & Cecere, P.C.; and James Scully, Esq.;

*Defendants.*

**FIRST AMENDED COMPLAINT**

**15-CV-627 (LEK)(DJS)**

*Jury Trial Demanded Hereon*

---

Plaintiff Anna L. Miranda, on behalf of herself and all others similarly situated, for her complaint, alleges as follows:

### NATURE OF ACTION

1.      This class action seeks to vindicate the rights of New York consumers who received false and deceptive state court summonses from the high-volume collection law firm of Daniels Norelli Scully & Cecere, P.C. in state court consumer collection actions brought in this District, in which Daniels Norelli Scully & Cecere, P.C. represented debt buyer, CACH LLC, a wholly-owned and controlled subsidiary of defendant SquareTwo Financial Corporation.

2.       Specifically, Defendants' boilerplate state court summonses falsely informed consumers that their time to file an answer or otherwise move in response to the state court collection actions filed against them was significantly shorter than it really was.

3.      These misstatements are clearly material because they misinform consumers as to important legal rights they have in state court collection actions, and can influence a

consumer's decision or ability to challenge a debt, and might reasonably prompt a consumer – operating under a false sense of urgency with regard to his or her time to put in an answer – to settle rather than litigate.

4.  Defendants' false and unfair misrepresentations violate the Fair Debt Collection Practice Act (FDCPA) 15 U.S.C. §§ 1692, *et seq.*, which was designed to prohibit precisely these sorts of abusive, deceptive, or unfair debt-collection practices, as well as New York General Business Law § 349.

## JURISDICTION AND VENUE

5.  This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6.  Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and § 2202.

7.  The Court has ancillary jurisdiction to determine any state law claims pursuant to 28 U.S.C. § 1367.

8.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Plaintiff lives in this district and the acts and transactions that give rise to this action occurred, in substantial part, in this district.

9.  Venue is also proper in this district because defendant conducts business in this district and the injury occurred in this district.

## PARTIES

*Named Plaintiff*

10.  Named Plaintiff Anna L. Miranda has at all relevant times been a resident of Schenectady County, New York State.

11.  Ms. Miranda is a "consumer" as that term is defined at 15 U.S.C. § 1692a(3).

12. Ms. Miranda was sued in a consumer collection action titled *CACH LLC v. Miranda* (2072-cv-14) (Schenectady City Court) (the "State Court Action").

13. In that State Court Action, CACH LLC ("CACH") was represented at all relevant times by Daniels Norelli Scully & Cecere, P.C. ("Daniels Norelli").

*Defendants*

14. Defendant SquareTwo Financial Corporation ("SquareTwo") is a Delaware corporation that was organized in February 1994 and is headquartered in Denver, Colorado.

15. SquareTwo describes itself in SEC filings as "a leading purchaser of charged off consumer and commercial receivables in the accounts receivable management industry.

16. SquareTwo's primary business is the acquisition, management and collection of charged-off consumer accounts.

17. SquareTwo operates its domestic charged-off receivables management business through a series of subsidiary entities, including CACH.

18. SquareTwo collected on approximately 300,000 (three hundred thousand) consumer accounts in 2014 through its subsidiary entities, including CACH.

19. According to recent SEC Filings, Square Two had $420.1 million dollars of annual cash proceeds from collection on charged off debt in 2014,  and has grown over the past several years at a "compound annual growth rate of approximately 27%.

20. Defendant CACH is a wholly-owned subsidiary of SquareTwo.   CACH and SquareTwo share the same address at 4340 S. Monaco Street, 2nd Floor, Denver, Colorado.

21.    CACH has no employees, and has not had employees for many years. Instead, CACH conducts its business through employees of SquareTwo.

22.    All of Square Two's collection accounts, including the accounts handled by CACH and Defendant Daniels Norelli Scully & Cecere, P.C. ("Daniels Norelli") at issue in this litigation, are managed using "eAGLE" which is Square Two's proprietary integrated account management system.

23.    All customer account information and collection activity is managed within Square Two's eAGLE system.

24.    Square Two requires that all collection activity performed on its behalf, including the collection activity undertaken by CACH and Daniels Norelli at issue in this litigation be performed in accordance with a standardized set of comprehensive policies and operational procedures, which SquareTwo refers to as its "Compliance Management System."

25.    CACH and SquareTwo share the same corporate leadership.   One manager of CACH, Paul Larkins ("Larkins"), is the President and CEO of SquareTwo and sits on its board.   Another manager of CACH, P. Scott Lowery ("Lowery), is a founder and board member of SquareTwo and serves as "Special Senior Advisor to the President and Chief Executive Officer and Director."

26.    On information and belief, Lowery, personally and through a variety of other vehicles/companies (including SquareTwo's parent corporation, CA Holding, Inc. and one or more family trusts Lowery controls directly or indirectly), owns a controlling share of SquareTwo.

27.  Lowery serves on the board of CA Holding, Inc. (SquareTwo's parent corporation) as does Larkins, who is appointed to CA Holding, Inc.'s board by Lowery.

28.  On information and belief, Lowery and Larkins, through CACH and SquareTwo, oversee CACH and SquareTwo's collection practice and have final, supervisory authority the collection practices and activities of CACH and SquareTwo.

29.  On information and belief, Lowery's and Larkins' principal business is the collection of debts. Lowery and Larkin regularly attempt to collect debts alleged to be due another, and are debt collectors under the FDCPA.

30.  CACH does not maintain its own collection records, nor does it have a custodian of records – these functions are performed by SquareTwo.

31.  Specifically, and without limitation, SquareTwo has provided CACH with Square Two employees who have testified as custodians of records on behalf of CACH in hundreds if not thousands of state court collection actions around the country.

32.  SquareTwo and CACH, parent and subsidiary, are alter egos and have such unity of interest that it would be unjust to prevent SquareTwo from recovering for the violations of CACH here.

33.  SquareTwo regularly causes CACH to transfer assets from CACH to SquareTwo while SquareTwo holds all liabilities related to such assets.

34.  Upon information and belief, CACH does not receive reasonably equivalent value of assets transferred to parent SquareTwo for the liabilities CACH has incurred in exchange for such transfer of assets.   The purpose and effect of such transfers is to avoid CACH from demonstrating a net worth for the purposes avoiding liability for violations of the FDCPA or other laws.

35.    All conduct of SquareTwo and CACH as alleged herein, was on each other's behalf, within the course and scope of agency each for the other; each was an alter ego for the other and/or was in a partnership or joint venture with the other, and all conduct of each was within the course and scope of that agency, alter ego, partnership and/or joint venture, and as such, the corporate fiction should be disregarded.

36.    Square Two and its alter ego, CACH, as well as Lowery and Larkins, are debt collectors as that term is defined under the FDCPA and are in the business for profit of debt collection by use of the mail, telephone, and the courts of New York and other means of interstate commerce.

37.    At all relevant times, Defendant Daniels Norelli was a law firm with a specialization in high volume consumer collection litigation.

38.    CACH hired Daniels Norelli and directed and/or accepted for its own benefit without protest Daniels Norelli's actions taken on CACH's behalf.

39.    In fact, Daniels Norelli represented CACH in thousands of debt collection lawsuits in New York State during the year prior to the filing of the instant litigation and for several years prior to that.

40.    However, upon information and belief, Daniels Norelli's relationship with CACH was not typical of how a law firm relates to a client, even in the collections industry.

41.    Rather, whereas collection law firms generally work for multiple clients, including multiple credit issues and debt purchasers, and set their own policies and procedures, Square Two structures its relationships with U.S. debt collection law firms differently.

42.     Specifically, it has exclusive relationships which, in past years it has characterized as a franchisor/franchisee relationship, pursuant to which the law firms (including, on information and belief Daniels Norelli) are required to do collection work exclusively with Square Two as part of its "Closed Loop Network".

43.     These law firms are currently referred to by Square Two as its "exclusive branch offices".

44.     These branch offices all operate on SquareTwo's proprietary technology platform and are required to conform to SquareTwo's "Compliance Management System".

45.     According to its SEC filings, SquareTwo's agreements with its law firms/"branch offices" contain provisions which "restrict the ability of the branch offices to collect debt for other providers."

46.     Compensation for Square Two's "branch offices"/law firms (including, upon information and belief Daniels Norelli at all relevant times) is subject to adjustment based upon performance against Square Two's operational and compliance standards.

47.     In light, *inter alia*, of the foregoing, SquareTwo has exercised extensive oversight and control over not only its alter-ego/subsidiary CACH but also, on information and belief, over Daniels Norelli.

48.     SquareTwo collects over half of its revenue through the use of its law firm "branch offices", including upon information and belief, Daniels Norelli.

49.     Upon information and belief, at all relevant times, Defendant Daniels Norelli has been:

   a.   a professional corporation organized and existing under the laws of New York State with a principal place of business in Nassau County, New York State;

    b.  a "debt collector" as that term is defined in the FDCPA;

    c.  in the business for profit of collecting consumer debt for others by use of the mail, telephone, and the courts of New York and other means of interstate commerce.

50.    Defendant James Scully, Esq. is a natural person and, upon information and believe, has at all relevant times been a principal and owner of Daniels Norelli.

51.    Upon information and belief, Defendant James Scully, Esq. oversees Daniels Norelli's collection practice and has final, supervisory authority over all form documents (including form summonses and complaints) used by Daniels Norelli.

52.    Upon information and belief, Scully's principle business endeavor is the collection of debts.  Scully regularly attempts to collect debts alleged to be due another and is a debt collector under the FDCPA .

53.    The law firm of Daniels Norelli Scully & Cecere, P.C. and Defendant Scully are referred to collectively herein as "DNSC".

54.    CACH and SquareTwo are referred to collectively herein as "SquareTwo Defendants".

## NAMED PLAINTIFF'S EXPERIENCES

*The Lawsuit*

55.    Sometime before June 2014, SquareTwo Defendants bought an alleged defaulted consumer debt in Ms. Miranda's name from HSBC Consumer Lending USA Inc/Beneficial ("debt" or "the debt").

56.    Whether or not the alleged debt was really Ms. Miranda's, it is an alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, or services are primarily for personal, family, or household purposes; hence it is a "debt" as that term is defined by the FDCPA.

57.     SquareTwo Defendants subsequently starting pursuing payment of the debt, *inter alia*, by hiring Daniels Norelli and instructing it to sue Ms. Miranda.

*The Summons*

58.     On or about June 19, 2014, Daniels Norelli commenced the State Court Action to collect the debt for SquareTwo Defendants by filing a summons and complaint in the Schenectady City Court.

59.      A true copy of the summons Daniels Norelli filed against Ms. Miranda on behalf of SquareTwo Defendants is attached hereto at Exhibit A ("Summons").

60.     The Summons contains the following language:

"YOU ARE HEREBY SUMMONED AND REQUIRED TO APPEAR IN COURT OF THE , OF, AT THE OFFICE OF THE CLERK OF SAID COURT AT City Hall Room 216, Jay Street, Schenectady NY 12305,  IN THE COUNTY OF , STATE OF NEW YORK, BY SERVING AN ANSWER TO THE ANNEXED COMPLAINT UPON PLAINITFF'S ATTORNEY, AT THE ADDRESS STATED BELOW, OR IF THERE IS NO ATTORNEY, UPON PLAINTIFF, AT THE ADDRESS NOTED ABOVE, WITHIN THE TIME PROVISION PROVIDED BY LAW AS NOTED BELOW."

Exhibit A.

61.     The Summons further states:

NOTE: The law provides:

(a)  If this summons is served by its delivery to you personally within the COUNTY OF SCHENECTADY you must appear and answer within TEN days after such service; or

(b) If this summons is served by delivery to any person other than you

personally or is served outside the COUNTY OF SCHENECTADY or

by publication or by any means other than personal delivery to you

within the COUNTY OF SCHENECTADY you are allowed THIRTY

days after proof of service is filed with the clerk of this court within

which to appear and answer."

62.   According to records filed in the Schenectady City Court by Defendants, Ms.

Miranda was alleged to have been served pursuant to CPLR § 308(2), by delivery of

the summons to an unnamed person of suitable age and discretion at her residence on

June 27, 2014, followed by the filing of the affidavit of service with the City Court

Clerk on July 9, 2014.

63.   A true copy of the affidavit of service alleging service and filing is attached to this as

Exhibit B.

64.   The summons was signed by Mr. Ira Sitzer, who is an attorney licensed to practice in

New York State.

65.   Mr. Sitzer is employed by Daniels Norelli, and signed the summons in the regular

course of his employment.

66.   By signing the summons, Mr. Sitzer (on behalf of Daniels Norelli and its client,

SquareTwo Defendants) certified that to the best of his knowledge, information and

belief, formed after an inquiry reasonable under the circumstances, the presentation of

the summons or the contentions therein were not frivolous as defined in section 130-

1.1(c) of 22 NYCRR, e.g., Defendants certified that the summons did not contain a

false statement of material fact.  See 22 NYCRR §130.1-1(a) and (c).

67.    This certification was false.

68.    Pursuant to applicable law (CPLR § 308(2), UCCA §402(b)) service was not, as stated in the Summons, due 30 days "after proof of service is filed with the clerk of court" but rather, 30 days after service was complete.

69.    As a matter of law, service was not complete upon filing with the clerk of court, but only ten (10) days after any such filing.

70.    The summons thus contained a false statement regarding the time Ms. Miranda had to answer the summons and complaint.

71.    Notably, the wording of the summons contradicts that prescribed by the Chief Administrator of the City Courts outside New York City at 22 NYCRR § 210.6(c), a true copy of which is attached at <u>Exhibit C</u>, of which Plaintiff asks the Court to take notice.

72.    Defendants knew or should have known that the summons did not comply with or adequately disclose the law, but used the summons in the form set forth at <u>Exhibit A</u> anyway.

73.    Upon information and belief, Defendants use the summons in the same form and style as <u>Exhibit A</u> every time they commence legal action against consumers in this District.

74.    Upon information and belief, defendants have commenced at least 325 legal actions against consumers in this District in 2014 alone.

*The Letter*

75.    On July 18, 2014, in furtherance of defendants' attempt to collect this alleged debt from Ms. Miranda, Daniels Norelli sent her a letter ("Letter").

76.    The Letter's third and fourth decretal paragraphs state:

    "Your time to answer the Summons and Complaint is limited. Failure to answer the Summons and Complaint or to amicably resolve this matter may result in the entry of a default judgment against you.

    You are encouraged to contact this office by 08/01/2014 so that we may discuss settlement and payment options. "

77.    The Letter was sent before service of the summons was complete and before Ms. Miranda's time to answer had even started to run.

78.    Upon information and belief, Defendants routinely send this or similar form letters to consumers when they sue consumers in this District.

79.    Although use of the Summons containing the false statements regarding a consumer's time to answer is, in and of itself, unlawful, use of the letter demonstrates one way in which Defendants have sought to leverage the false statements found in the Summons in subsequent communications with consumers.

## CLASS ALLEGATIONS

80.    The plaintiff, Anna Lisa Miranda, brings this action on behalf not only of herself, but also on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

81.    Plaintiffs seek to represent the following class and two (2) subclasses  defined as follows:

    a.    The Class:

        (i)  Natural persons;

        (ii)  who were sued by CACH;

      (iii)  in a state court consumer collection action;

      (iv)  brought in the Northern District of New York;

      (v)   in an action in which Daniels & Norelli represented CACH;

      (vi)  and in which a summons sent to the state court defendant misdescribed the state court defendant's time to answer by stating, in relevant part: "If this summons is served by delivery to any person other than you personally or is served outside the COUNTY [_____] or  by publication or by any means other than personal delivery to you within the COUNTY OF [_____] you are allowed THIRTY days after proof of service is filed with the clerk of this court within which to appear and answer."

b.     The FDCPA Subclass

      (i)   all those who meet the class criteria set forth above at paras. 44 and who, in addition, were sent said Summons within one year of the initiation of the instant class action.

c.     The NYGBL § 349 Subclass:

      (i)   all those who meet the Class definition set forth above at paras. 44 and who, in addition, were sent said Summons within three years of the initiation of the instant class action.

82.     All members of the Class are also members of one or both of the two subclasses.

83.     Excluded from the Class and subclasses are:

       a.  anyone who was alleged to have been served by in-hand personal service pursuant to CPLR § 308(1);

       b.  anyone employed by counsel for Plaintiff in this action; and

       c.  any Judge to whom this case is assigned, as well as his or her immediate family and staff.

Numerosity:

84.     The Summons at issue in this case is a boilerplate document whose language does not materially vary from one action to the next, and which, upon information and belief, was sent by Defendants to hundreds, and possibly thousands, of consumers.

85.     The Class and subclasses include hundreds, and possibly thousands, of members and are sufficiently numerous that joinder of all members is impractical.

86.     Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Plaintiffs' records.

Existence And Predominance Of Common Questions:

87.     Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members.

88.     These common questions include:

       a.  whether the Summons misrepresented the law regarding a state court consumer collection action defendant's time to answer , and more specifically, whether the Summons impermissibly stated a shorter time to answer than provided for under applicable state law;

       b.  whether such false, misleading and deceptive acts were  material in nature.

    c.   whether Defendants engaged in unfair and/or deceptive debt collection practices in violation of the FDCPA and/or GBL § 349.

    d.   whether Plaintiff and the other Class members are entitled to statutory damages, costs and attorney's fees under the FDCPA.

    e.   whether Plaintiff and the other Class members are entitled to damages of $ 50 each, costs and attorney's fees under GBL § 349.

Typicality:

89.    Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiff was

    (i)     sued by CACH;

    (ii)    in a state court consumer collection action;

    (iii)   brought in the Northern District of New York;

    (iv)   in which CACH, represented by Daniels Norelli, was the state court plaintiff; and

    (v)    in which a Summons containing the relevant false boilerplate was sent to her.

90.    Thus, plaintiff's claims – based on the same boilerplate misstatements of law as the claims of all other class members -- are typical of the claims of the class.

91.    Put differently, all of the claims are based on the same factual and legal theories and the plaintiff, together with each class member, have been subjected the same false and deceptive communications and acts by Defendants.

Adequacy:

92.     Plaintiff will fairly and adequately represent the interests of the class members. Her interests do not conflict with the interests of the members of the Class she seeks to represent.

93.     Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this plaintiff and her counsel will not vigorously pursue this matter.

Superiority:

94.     The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

95.     The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

96.     Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

97.     Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

98.     By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

99.     In the alternative, the Class may be certified because:

(a)     the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying

adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

(b)      the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

(c)      Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I
*(Violation of the Fair Debt Collection Practices Act)*

100.   Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

101.   Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

102.   A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

103.   Such a prohibition includes the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A).

104.   Such a prohibition also includes the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. § 1692e(10).

105.    A debt collector may not "use unfair or unconscionable means to collect or

attempt to collect any debt." 15 U.S.C. § 1692f.

106.    Defendants violated the FDCPA by sending out the Summons in its attempt to collect

from Plaintiff and all others similarly situated because this conduct:

   a.  Misrepresents the character, amount, or legal status of the debt in violation

       of 15 U.S.C. §1692e(2)( A);

   b.  Falsely represents that the consumer has 30 days from the date of filing of

       proof of service to answer the summons and complaint, when -- under

       applicable law -- the consumer has 30 days from the date service is

       complete, and service is not complete until 10 days after the affidavit of

       service is filed. *I.e.*, Defendants falsely stated in the Summons that

       consumers' time to answer was 10 days shorter than provided for under

       applicable law -- in violation of 15 U.S.C. §§ 1692(e),  1692(e)(2)(a),

       1692(e)(5) and 1692(e)(10).

   c.  Falsely, unfairly and unconscionably misstates the law in the Summons

       regarding consumers' rights to answer the State Court complaint, in

       violation of 15 U.S.C. § 1692f.

107.    As a result of Defendant's violations of the FDCPA, Plaintiff and the Class are

entitled to declaratory judgment, statutory damages, costs and attorneys' fees pursuant

to 15 U.S.C. § 1692k.

## COUNT II
(New *York State General Business Law § 349)*

108.    Plaintiffs hereby repeats and re-alleges and incorporates by reference all foregoing

paragraphs.

109.   Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in the First Cause of Action was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of § 349 independent of whether it also constituted a violation of any other law.

110.   Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

111.   Specifically, and without limitation, as set forth herein, Defendants falsely stated in the Summons that the state court defendant's time to answer was 10 days shorter than provided for under applicable law.

112.   These misstatements misinform consumers as to important legal rights they have in state court collection actions; may influence a reasonable consumer's decision or ability to challenge a debt; and might reasonably prompt such a consumer – operating under a false sense of urgency with regard to his or her time to put in an answer – to settle rather than litigate.

113.   By making these misstatements with regard to the rights of consumers in state court collection actions, Defendants have impaired the exercise of those rights.

114.   Plaintiff and all others similarly situated have been damaged thereby.

115.   Upon information and belief the Defendants' conduct as set forth herein has been frequent, intentional, and persistent.

116.   As a result of Defendant's violations of § 349, Plaintiff and each other member of the NYGBL§ 349 subclass are entitled to declaratory judgment; damages of $50 each, costs and attorneys' fees

## COUNT III
*(Alter Ego Single-Enterprise Doctrine Against Defendants)*

117.   Plaintiffs hereby repeats and re-alleges and incorporates by reference all foregoing paragraphs.

118.   Defendants CACH and SquareTwo are in a similar or functionally reciprocal business of debt collection as defined by the FDCPA.

119.   CACH and SquareTwo are alter egos in that CACH is merely an instrument and/or conduit of SquareTwo in the pursuit of the single business venture and/or enterprise of debt collection.

120.   CACH and SquareTwo lack separate existences.

121.   On information and belief, they co-mingle funds; share common directors, officers, and employees; and jointly benefit from their self-dealing transactions entered into by one another.

122.   On information and belief, SquareTwo possesses and dominates control over Defendant CACH's finances, policies, and business practices in order that SquareTwo and CACH may avoid liability.

123.   On information and belief, Defendants established this corporate relationship to avoid liability, including to avoid the effect of the FDCPA.

124.   Upon information and belief, Defendants attempt to conceal or remove assets from CACH's ledgers so that it could be judgment proof or otherwise not liable for damages and other relief in an action such as the instant action by Plaintiff.   CACH merely transfers whatever amount is necessary to its parent company in order to limit liability, including FDCPA liability.   As a result, CACH is significantly under-capitalized.

125.    Disregarding the separate nature of the corporations here is necessary to prevent the substantial injustice of CACH continuing a business practice which effectively results in immunity from the FDCPA.

**WHEREFORE** plaintiff and members of the class respectfully request that this Court award:

A.  An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing her attorneys as Class Counsel;

B.  A judgment declaring that Defendants have committed the violations of law alleged in this action;

C.  An order declaring that Defendant SquareTwo is the alter ego of Defendant CACH such that SquareTwo may be held liable for the judgment rendered;

D.  Statutory damages pursuant to the FDCPA;

E.  $50 per class member pursuant to NYGBL § 349.

F.  An order awarding disbursements, costs, and attorneys' fees pursuant to the FDCPA and NYGBL § 349;

G.  Payment of a reasonable service fee to the named Plaintiff for her efforts on behalf of the class; and

H.  Such other and further relief that may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

*[signature blocks on following page]*

DATED:        August 11, 2016

KAKALEC & SCHLANGER, LLP

*s/ Daniel A. Schlanger*
Daniel Schlanger (519417)
Patricia Kakalec (509731)
85 Broad Street, 18th Floor
New York, NY 10004
T: 212.500.6114 ext. 101/F.  646.612.7996
dschlanger@kakalec-schlanger.com
pkakalec@kakalec-schlanger.com

ANTHONY J. PIETRAFESA ESQ. (102368)
721 University Building
120 East Washington Street
Syracuse NY 13202
T. 518.218.0851/F. 518.514.1241
ajp@ajp1law.com


*ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS*